Dobish v. Packing Co.

No. 21,349.

FRANK DOBISH, *Appellee,* v. THE CUDAHY PACKING COM-
PANY, *Appellant.*

SYLLABUS BY THE COURT.

COMPENSATION ACT—*Personal Injuries—Failure to Procure Proper Med-
ical Attention—Evidence.* In an action under the workmen's compen-
sation act, the defense relied upon was that plaintiff's injuries were
the result of his own negligence in failing to procure proper medical
attention. *Held,* that there was no substantial basis in the evidence
for this claim, and further, that the instructions upon this issue were
not prejudicial to the defendant.

Appeal from Wyandotte district court, division No. 2;
FRANK D. HUTCHINGS, judge. Opinion filed November 10,
1917. Affirmed.

*J. E. McFadden,* and *O. Q. Claflin, jr.,* both of Kansas City,
for the appellant.

*W. W. McCanles, Charles E. Thompson,* and *H. F. Gorsuch,*
all of Kansas City, for the appellee.

The opinion of the court was delivered by

PORTER, J.: This is an action under the workmen's com-
pensation act. The jury returned a verdict for the plaintiff
and special findings to the effect that the plaintiff was injured
by an accident arising out of and in the course of his employ-
ment, and was thereby totally incapacitated for a period of
416 weeks. They awarded compensation in the sum of $2,484,
which is the amount provided for by the statute based on the
wages earned by the plaintiff. The court overruled a motion
for a new trial and defendant appeals.

The principal defense urged at the trial was that the plain-
tiff's injuries resulted from his negligence in not procuring
proper medical attention.

The plaintiff is a foreigner, unable to speak the English
language, and his testimony was given through an interpreter.
The testimony shows that he was injured on the 6th day of
April, 1916. He was at work pulling hams from a barrel by
means of a hook held in his right hand. While lifting one of

the hams, the hook accidentally struck his left hand, penetrating the skin near the base of the thumb. A fellow workman took a clean rag and wrapped the thumb and the plaintiff continued to work for the few hours that remained that day. He did not consider the injury to be of any consequence, and returned to work the next day, but about four o'clock in the afternoon his hand pained him and he went to the office of Dr. Lewis, who was the physician at the defendant's plant. The doctor administered treatment, cleaned the wound, put on an antiseptic dressing, and told him to return the next day. The plaintiff's testimony was that the doctor told him to put the hand in hot water, and that he followed these directions, but did not return the next day because his hand was paining him so that he was unable to leave his bed; that he had his landlord call for Dr. Lewis by telephone, but failed to get the doctor; then had the druggist in the neighborhood telephone for him. The druggist testified that he called by telephone three times for the doctor's office, and talked with the timekeeper at the packing house, but failed to reach Dr. Lewis. The plaintiff then called Dr. Smith, a reputable physician, who came to the house and treated him for two days. The plaintiff's condition became more serious, and on someone's advice he called another physician, Dr. Brown, also shown to be a reputable physician, who gave him treatment during four days. Some days afterward Dr. Lewis called at the house and had the plaintiff removed to a hospital, where he remained for three weeks and where Dr. Lewis operated upon the arm and hand. Dr. Lewis testified that he first saw the patient on April 7th, at his office; that at that time—

"He had a slight laceration on the palmar surface of the thumb of the left hand. I administered treatment, thoroughly cleansed the wound with bichloride solution and used iodine, put on an antiseptic dressing. The wound was not very deep, just a slight laceration."

He further testified that when he next saw the plaintiff, about two weeks after the injury, he found an infection of the hand, wrist, and forearm and that the arm was somewhat red and inflamed; that he found no bandages of any sort on the arm.

"He was just lying there in bed with his arm exposed from the shoulder down, no dressings on it whatever. Iodine had been put on the arm

and there was some discoloration due to either iodine or iodo-miller. The original wound had entirely healed up."

He took the plaintiff to the hospital and prepared him for an operation, made several incisions on his arm, wrist, and hand, and drained it.

"I continued to treat him thereafter. He was at the hospital about three weeks."

When Dobish first came to him he washed the thumb thoroughly with bichloride solution and sterilized it with tincture of iodine, then put a bichloride of mercury pack on it. The doctor testified there was at that time no infection, and that keeping the hand in hot water would have been a good plan for Dobish to have followed.

As usual in cases involving the question of proper medical treatment, there was some conflict in the testimony of physicians called on behalf of one party and those who testified for the other, but the conflict was very slight, and all the physicians agreed that iodine and antiseptics were properly used at first, and that drainage is usually not resorted to in cases of this kind until after the wound becomes infected.

The errors complained of relate to the instructions. In stating to the jury the issues involved, the court gave this instruction:

"2. The defendant for answer to plaintiff's petition, denies each and every allegation therein contained."

It is claimed this was prejudicial error because the defendant had filed an answer setting up as a special defense that the disability complained of "is not the result of any injury he may have received in the course of his employment, but is the result of his negligence in not procuring and having proper medical attention." The defendant's first answer, however, consisted of a general denial, and during the progress of the trial the defendant filed an amended answer setting up the special defense above referred to, which fact was doubtless overlooked by the court in preparing the instructions. The defendant could not have been prejudiced in the slightest, because the court, in instruction No. 5, submitted the special defense raised by the amended answer, and the amended answer did contain a general denial of each and every allegation of the petition.

Complaint is made, however, of the language used in instruction No. 5.  In this instruction, the court, after charging that the right to recover under the compensation act  is based upon an accident arising out of and in the course of the workman's employment, further instructed as follows:

"The amount of recovery can not be augmented by a cause separate and independent of the injury, the consequences of which admit of definite ascertainment, and in this case if the jury find from the evidence that the injury which the plaintiff received was of comparatively little importance and from which he would normally have recovered without any serious consequences, but that by reason of his own acts in failing, neglecting or refusing to call proper medical aid, if you find that he did so fail, neglect and refuse, said injury became infected and you can determine from the evidence with reasonable certainty how much the injury was augmented by reason of said wound becoming infected, then you are instructed that the plaintiff would only be entitled to recover in this action compensation for the injury which was caused by the acci-dent, and would not be entitled to recover for any augmentation of said injury occasioned by said infection, but if you find from the evidence that said infection occurred at the time the plaintiff received the injury or that it occurred subsequent to said time, but that the plaintiff in either event used reasonable and ordinary care to obtain competent and proper medical and surgical aid, then you are instructed that he would be en-titled to recover full compensation for the results of said injury, al-though you may believe from the evidence that the injurious results were augmented and caused in great part by its being infected."

It is complained that the instruction placed the burden of proof upon defendant; that it is ambiguous and its meaning vague and obscure; that even though the jury believed the injury was augmented by reason of plaintiff's own conduct, yet if they could not determine the extent to which his injury was thus affected, they were justified in concluding that his present condition resulted from the original injury.

As applied to the facts disclosed by the evidence, we think it can not be said the instruction prejudiced the defendant.  Some of the language used is open to the criticism that it is somewhat ambiguous, but the important issue was kept before the jury, and they were given to understand that plaintiff was not entitled to recover for any augmentation of his injury by reason of the wound becoming infected, if that resulted from his neglect to procure proper medical attention.  Nor is the instruction open to the objection that it placed the burden of proof upon the defendant.  It did not attempt to treat of that

question. In another instruction the court properly charged that the burden of proof was upon the plaintiff to prove, by preponderance of the evidence, every material allegation of his petition.

Moreover, we are not disposed to attach importance to the language of the instruction, for the reason that an examination of the record satisfies us that there was no substantial basis in the evidence for the claim that the plaintiff was negligent in procuring proper medical attention. There is no dispute as to what occurred. He went promptly enough to the defendant's doctor, who gave him all the treatment deemed necessary; when he found himself unable to leave his bed the following day, he certainly used reasonable efforts to procure the attendance of Doctor Lewis, and, failing in that, immediately called in a competent physician. When he failed to get relief, he discharged that physician and called another. It would be a strange doctrine to hold that this man, unable to speak our language, is to be held guilty of negligence because doctors called as expert witnesses failed to agree as to what was the proper medical treatment for his injury. The mere fact that Doctor Lewis found him in bed several days after the injury with no dressing or bandage upon his hand and arm does not tend to show that the plaintiff was negligent in procuring proper medical attention. Three physicians had failed to bring him relief, and it is not strange that in his suffering he was found with no bandages or dressing upon his arm. We conclude that the defendant was not prejudiced by the instructions. There is some complaint that the amount of compensation is excessive, but we are unable to say that it is not supported by some substantial evidence.

The judgment is affirmed.